# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0244-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN GONZALEZ,

    Defendant-Appellant.

_____

Submitted December 10, 2024 – Decided January 8, 2025

Before Judges Smith and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-02-0503.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant John Gonzalez appeals from the Law Division order denying his second petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant and codefendant were charged with twenty-nine-count indictments related to two violent incidents that occurred on September 30, 2011. The first incident involved the robbery and murder of L.B., and the second incident involved the robbery of G.T., and the robbery and sexual assault of B.C.[1] Although defendant was sixteen at the time of the incidents, he was charged as an adult.

Defendant was convicted by a jury after a six-day trial in January of 2016. We affirmed defendant's convictions and sentence on direct appeal. State v. Gonzalez, No. A-0066-16 (App. Div. Oct. 19, 2018) (Gonzalez I). We recount the facts from our opinion:

> On September 30, 2011, C.B., a friend of L.B., . . . made arrangements to meet her at his home. Anticipating her arrival, C.B. was looking out a window on the second floor of his house. In the evening, he saw L.B. arrive in a white van. C.B. then saw three Hispanic men in hooded sweatshirts approach the van. He noted that one of the men's sweatshirts had a cartoon character's face on the front. One of the men went to the driver's side

---

[1] We use initials to protect the privacy of the victims pursuant to Rule 1:38-3(c)(10).

of the van and the other two men went to the passenger's side.

L.B. exited the van and began walking towards C.B.'s door.  C.B. left the window and walked downstairs to open the door for L.B.  Before he opened the door, he heard L.B. say: "I don't have anything," and "stay away from me[.]"  He then heard gunshots.  C.B. went back upstairs, looked out the window, and saw L.B. sitting on his front steps.  A few minutes later, he saw another woman he knew as "Cookie" come around the street corner, approach L.B., and he heard L.B. tell Cookie[,] "they shot me."  Cookie called 911.

That same night, G.T. was at his home, which was located less than two blocks from where L.B. was shot. G.T. was over eighty years old at the time, and B.C., his former caretaker and friend, was living with him.

Just after 11[:00] p.m., G.T. and B.C. heard bangs on their door.  G.T. opened the door and . . . three men then entered the home, two of whom had guns and one of whom was pointing a gun at G.T.  The men demanded money from G.T.  The men then told B.C. to take her clothes off and forced her to perform oral sex on G.T. Thereafter, B.C. was forced to perform oral sex on the three men and each of the men raped her vaginally and anally.  When B.C. tried to resist the assaults, she was punched and hit with a gun.

While at the home, the men searched for and took various items, including watches, keys, a cell phone, a camera kit, coins, and a chain.  The men also threatened G.T. and B.C. throughout the time that they were at the home.  Eventually, the men left the home.  G.T. then called the police.

3

The police arrived shortly thereafter and began to search the area for the suspects. Police officers saw three men who began to run when the officers stopped to question them. The officers pursued and eventually apprehended defendant and Alicea. The third suspect[] escaped and apparently has not been located.

While pursuing defendant, an officer saw defendant discard a blue sweatshirt that was later recovered. Inside the sweatshirt, the police found a handgun. When defendant was searched incident to his arrest, the police found two watches and a chain belonging to B.C. and G.T. After being arrested, defendant was taken to G.T.'s home and G.T. identified defendant as one of the men involved in the robbery and sexual assaults.

In the meantime, B.C. was taken to the hospital and evaluated by a sexual assault nurse examiner (SANE nurse). During the examination, B.C. described the sequence of events leading up to the sexual assaults and what the suspects looked like. After her examination, B.C. was taken to the police station where she identified defendant in a photo array.

Following defendant's arrest, he was read his Miranda[2] rights and agreed to give a statement. Thereafter, he admitted to being at the scenes of the murder and home invasion. He also acknowledged that he had been wearing a blue hooded sweatshirt and that he had been carrying a gun. Prior to trial, defendant moved to suppress his statement, but the court denied that motion.

[Gonzalez, slip op. at 3-6 (footnotes omitted) (Gonzalez I).]

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

After trial, the jury convicted defendant of: second-degree burglary, N.J.S.A. 2C:18-2; first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree aggravated sexual assault during the commission of a burglary, N.J.S.A. 2C:14-2(a)(3); three counts of second-degree conspiracy, N.J.S.A. 2C:5-2, N.J.S.A. 2C:18-2, N.J.S.A. 2C:15-1, and N.J.S.A. 2C:14-2(a)(3); two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The jury also convicted defendant of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3), in connection with L.B.'s homicide. However, the trial court vacated the felony murder conviction.

Defendant appealed his convictions and sentence. He argued that the trial judge erred by: denying his motion to suppress his statement given to police; failing to sua sponte charge trespass as a lesser-included offense of burglary; failing to sua sponte charge the jury on accomplice liability for lesser included offenses; failing to sua sponte preclude the SANE nurse from providing hearsay testimony about the sexual assault; and imposing an illegal sentence. We affirmed on direct appeal for the reasons stated in Gonzalez I.

Defendant timely filed a pro se PCR petition, the first of what became two petitions for relief. In the first petition, defendant argued that his trial counsel

was ineffective for failing to: request a charge of trespass as lesser offense for burglary; request a lesser offense as an accomplice; object to the SANE nurses' testimony at trial; and failing to investigate his codefendant. Defendant also argued his sentence was illegal and that the trial court erroneously considered aggravating factor six.

Defendant supplemented the first petition, claiming he received ineffective assistance of counsel (IAC) because: counsel was not present at his interview; counsel failed to get consent from defendant's mother before permitting defendant to be interviewed by police; and counsel failed to argue at the suppression hearing that his statement should have been barred. The first PCR judge denied defendant's petition without an evidentiary hearing, on February 24, 2021. On June 24, 2022, we affirmed the denial of the first PCR in State v. Gonzalez, No. A-2243-20 (App. Div. Jan. 17, 2023) (Gonzalez II).

On April 28, 2022, defendant filed a second PCR petition. The second PCR judge listed defendant's new claims in great detail. We summarize here. Defendant's allegations of IAC included that: trial counsel failed to timely or properly advise defendant on a plea offer of twenty years with a NERA stipulation "during the summation stage of the trial"; trial counsel did not give defendant enough time to consider such and offer; first PCR counsel failed to

raise the first two points in the initial PCR petition; and finally, first PCR counsel failed to advise defendant on the one-year time limitation for a second PCR claim. Seeking to avoid the time bar for second PCR petitions under <u>Rule</u> 3:22-12(a)(2), defendant argued to the second PCR judge that his filing was delayed due to "COVID restrictions that were in effect."

On July 12, 2023, the second PCR judge heard argument and denied relief, finding the second petition was barred as untimely, pursuant to <u>Rule</u> 3:22-12(a)(2). Given the time bar finding, the second PCR judge declined to address defendant's petition on the merits.

In this second PCR appeal, defendant raises two issues:

> I. DEFENDANT'S SECOND PCR PETITION SHOULD NOT HAVE BEEN TIME BARRED.
>
> II. THIS MATTER MUST BE REMANDED FOR A HEARING ON THE SECOND PCR PETITION'S MERITS BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF FIRST PCR COUNSEL'S INEFFECTIVENESS FOR FAILING TO RAISE TRIAL COUNSEL'S INADEQUATELY COMMUNCIATING TO HIM THE STATE'S PLEA OFFER. (Not Raised Below)

The dispositive issue is whether defendant's second PCR is time barred. Our Rules of Court place strict limitations on second and subsequent petitions for PCR. They compel dismissal of a subsequent PCR petition unless the

defendant's claim is: brought within the applicable time period; and falls within one of three grounds for relief. See R. 3:22-4(b).

We first consider timing for such a filing. Rule 3:22-4(b)(1) requires second and subsequent PCR petitions to be timely filed under Rule 3:22-12(a)(2), which instructs that petitions cannot be filed beyond one year after the latest of:

> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or
>
> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or
>
> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

We next consider the permissible grounds of relief for a second or subsequent PCR petition. Rule 3:22-4(b)(1) requires that a second or subsequent petition for PCR allege either:

A-0244-23

(A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or

(B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

(C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief.

Our review of the record together with the applicable rules leads us to conclude that the one-year time limitation for the second or subsequent petitions cannot be relaxed. R. 3:22-12(b). First, defendant did not claim a new constitutional right, so his petition cannot be considered timely under Rule 3:22-12(a)(2)(A). Second, defendant's factual claims in this petition were known to him more than a year before he filed his petition and cannot be considered timely under Rule 3:22-12(a)(2)(B). Finally, defendant's petition was clearly beyond the one-year mark under Rule 3:22-12(a)(2)(C) as the first PCR judge denied relief on February 24, 2021, and defendant did not file the second PCR until

A-0244-23

April 18, 2022. We conclude, as did the second PCR judge, that defendant's PCR is time barred.

We need not reach defendant's claim that first PCR counsel was ineffective for two reasons. First, it is clearly time-barred. Second, it was not raised below. See Nieder v. Royal Indem. Co., 62 N.J. 229, 234 (1973).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION